UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TAMMY RENEE COX, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 5:11-CV-02319-LSC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
|     Defendant. ) | |

MEMORANDUM OF OPINION

I.  Introduction

The plaintiff, Tammy Renee Cox, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Cox timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Cox was forty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has at least a high school education and is able to communicate in English. (Tr. at 25.) Her past work experiences include employment as a laundry laborer and laundry attendant.  (*Id.*)  Ms. Cox claims that she became

disabled on January 1, 2009, due to migraine headaches and residuals of an intracranial hemorrhage. (Tr. at 24.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she

will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Cox meets the insured status requirements of the Social Security Act through December 31, 2013. (Tr. at 20.) He further determined that Ms. Cox has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's history of substance abuse in current remission, history of drug related syncope (passed out and sustained head trauma with intracranial hemorrhage) and migraine

headaches are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 21.) The ALJ did not find Ms. Cox's allegations to be totally credible, and he determined that she has the following residual functional capacity: light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with a sit-stand option; she can lift and carry eight to ten pounds with each hand and she can carry ten to twenty pounds on occasion; she can sit for forty-five minutes at one time for five out of eight hours of an eight-hour day; she can stand for thirty minutes at one time for four out of eight hours and walk one hundred feet at one time. (Tr. at 22.) In addition to physical impairments, the ALJ noted that Ms. Cox has mental and social limitations which affect her functional capacity including difficulty remembering and completing detailed instructions, interacting with and responding to peers and supervisors, adjusting to unfamiliarity and change, and sustaining the mental and physical ability to work full days without taking several breaks. (Tr. at 22-23.) The ALJ did determine, though, that she could appropriately manage at least casual and informal contact with the general public, co-workers, and supervisors, although not for prolonged periods of time. (Tr. at 23.)

According to the ALJ, Ms. Cox is unable to perform any of her past relevant work, she is a "younger individual," and she has a "high school education," as those terms are defined by the regulations. (Tr. at 25.) He determined that "[t]ransferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." (*Id.*) The ALJ found that Ms. Cox has the residual functional capacity to perform a limited range of light work. (*Id.*) Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as a parking lot attendant, ticket taker, and hand packager. (Tr. at 25-26.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, from January 1, 2009, through the date of this decision." (Tr. at 26.)

II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d

1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

Ms. Cox alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that the ALJ did not establish other work that she could perform based on substantial evidence. (Doc. 8 at 9.) Second, she contends that the ALJ failed to develop the record. (*Id*. at 10.)

   A.   Establishment of Other Work

Plaintiff argues that the ALJ erred in finding that she could perform the jobs of a parking lot attendant and ticket taker at step five of the sequential evaluation. (Doc. 8 at 9.) In cases where the claimant is unable to perform her past relevant work, the ALJ should determine whether, in light of the claimant's RFC, age, education, and past work experience, she can perform other work. *Wilson v. Barnhart*, 284 F. 3d 1219, 1227 (11th Cir. 2002) (*citing Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). In order to determine whether Plaintiff could perform other work at step five of the evaluation, the ALJ properly consulted a Vocational Expert ("VE"). (Tr. at 73-76.) *See* 20 C.F.R. §§ 404.1560, 404.960. A VE may offer relevant evidence concerning the physical and mental demands of a claimant's past relevant work and offer expert opinion testimony in response to a hypothetical question about whether a person of the claimant's age, education, work experience, and medical impairments

can perform such work. *Id.* Any other work that a claimant is capable of performing must exist in significant numbers in the national economy. *Id.*; *see also Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987). The plaintiff carries the burden of showing that she is unable to perform the jobs identified by the ALJ. *See Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005).

After properly assessing Plaintiff's RFC, the ALJ determined that Plaintiff could not perform her past relevant work (Tr. at 25, finding 6), so he sought to determine if Plaintiff could perform other work in accordance with 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). The VE testified that a person with Plaintiff's vocational background and RFC could appropriately manage at least casual and informal contact with the general public, co-workers, and supervisors. (Tr. at 75.) The VE further testified that a person with Plaintiff's limitations could perform the jobs of a parking lot attendant, ticket taker, and hand packager. (Tr. at 76.)

Plaintiff argues that the ALJ erred in determining that an individual with Plaintiff's limitation of casual and informal contact with the public can work as a ticket taker or parking lot attendant. (Doc. 8 at 9.) Plaintiff's argument misconstrues the testimony of the VE and the ALJ's determination. The ALJ did not restrict Plaintiff from contact with the general public; instead, the ALJ agreed with the testimony of

the VE that Plaintiff can manage *at least* informal and casual interaction with the general public, co-workers, and supervisors. (Tr. at 22-23, finding 5.) Plaintiff provides descriptions of the jobs of ticket taker and parking lot attendant from the Dictionary of Occupational Titles ("DOT"), but these descriptions do not conflict with her RFC limitation, since neither job requires more than casual or informal contact with the general public.[1]

---

[1] The DOT describes the job of ticket taker as follows:

> Collects admission tickets and passes from patrons at entertainment events: Examines ticket or pass to verify authenticity, using criteria such as color and date issued. Refuses admittance to patrons without ticket or pass, or who are undesirable for reasons, such as intoxication or improper attire. May direct patrons to their seats. May distribute door checks to patrons temporarily leaving establishment. May count and record number of tickets collected. May issue and collect completed release forms for hazardous events, and photograph patron with release form for permanent records file. May be designated Gate Attendant (amuse. & rec.) or Turnstile Attendant (amuse. & rec.) when collecting tickets at open-air event.

Dictionary of Occupational Titles 344.667-010. The job of parking lot attendant is described as follows:

> Parks automobiles for customers in parking lot or storage garage: Places numbered tag on windshield of automobile to be parked and hands customer similar tag to be used later in locating parked automobile. Records time and drives automobile to parking space, or points out parking space for customer's use. Patrols area to prevent thefts from parked automobiles. Collects parking fee from customer, based on charges for time automobile is parked. Takes numbered tag from customer, locates automobile, and surrenders it to customer, or directs customer to parked automobile. May service automobiles with gasoline, oil, and water. When parking automobiles in storage garage, may be designated Storage-Garage Attendant (automotive ser.). May direct customers to parking spaces.

Furthermore, Plaintiff does not contest the ALJ's determination that she is able to work as a hand packager. Even if the other two jobs did require interaction with the public exceeding Plaintiff's capabilities, she would still be able to work as a hand packager. The ALJ established that there are 150,000 hand packager jobs available nationally and 3,100 in the state. (Tr. at 76.) Thus, the ALJ properly established at least one other job which Plaintiff could perform that exists in significant numbers in the economy. *See Allen*, 816 F.2d at 602 (finding that 174 small appliance repairman positions in the area in which the claimant resided established the existence of work in significant numbers).

Plaintiff further argues that the ALJ's determination is flawed because the record indicates Plaintiff's inability to perform work in a regular and sustained manner. (Doc. 8 at 10.) Although the record contains evidence of many emergency room visits for headache pain, which Plaintiff puts forth as evidence that she is unable to work regularly, the ALJ determined that, based on the medical evidence in the record, Plaintiff's impairment does not significantly limit her ability to perform work on a regular and continuing basis. (Tr. at 24.) Each time Plaintiff visited the emergency room, she was discharged in stable or improved condition and able to

---

Dictionary of Occupational Titles 915.473-010.

return to work without restrictions, and tests never revealed significant abnormalities. (Tr. at 228, 258, 308, 361, 384, 548, 697.) Considering the assessments of both Dr. Wood, a consultative psychologist, and Dr. Suggs, a physician who examined Plaintiff, the ALJ determined that the record did not substantiate the alleged level of severity. (Tr. at 24.) Dr. Suggs's evaluations from July and September 2009 indicated that Plaintiff was doing "fairly well" and better overall, and that medication was helping Plaintiff's migraine headaches. (Tr. at 544-54.) Dr. Wood's consultative mental examination noted that the immediate and short-term memory deficits that Plaintiff complained of were not apparent in his examination, and that her symptoms "affect but do not preclude her ability to recall instructions and attend to tasks for at least two consecutive hours . . . nor her ability to interact with coworkers, supervisors, and customers." (Tr. at 261-65.)

Plaintiff has failed to prove that she cannot perform the other work identified by the ALJ. Thus, substantial evidence supports the ALJ's decision that Plaintiff could perform other work; therefore, she was not disabled.

    B.    Development of the Record

Plaintiff asserts that the ALJ failed to properly develop the record. (Doc. 8 at 11.) The Supreme Court stated in *Sims v. Apfel*, 530 U.S. 103 (2000), that "Social

Security proceedings are inquisitorial rather than adversarial" and that the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 110-11 (*citing Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (*citing Ford v. Secretary of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B)). The ALJ is not required to order a consultative examination as long as the record contains sufficient evidence to make an informed decision. *Id.* In fact, the regulations state that the Agency *may* ask for a consultative examination if the evidence obtained from other medical sources is insufficient for the ALJ to determine whether an individual is disabled. 20 C.F.R. §§ 404.1517, 416.917. Furthermore, Plaintiff must make a "clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.2d 1420, 1422 (11th Cir. 1997). Thus, Plaintiff must show that the lack of records created an evidentiary gap, resulting in unfairness or clear prejudice. *See Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir.

1991) (finding that claimant was not prejudiced by a lack of representation because record did not contain any discernible evidentiary gaps).

Here, the ALJ had sufficient evidence from the record and testimony of the VE to determine whether Plaintiff was disabled or not disabled during the relevant period. The ALJ considered Plaintiff's symptoms in light of objective medical evidence and other evidence as required by 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p. (Tr. at 23.) Additionally, he considered opinion evidence as required by 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (*Id.*) As a result, the ALJ was not required to order a consultative examination because he was able to make an informed decision without it.

Furthermore, Plaintiff did not show that her claim was prejudiced by the lack of a consultative examination. Plaintiff argues that the ALJ was required to order a consultative examination because the consultative report in the record by Dr. Wood occurred before her abdominal surgery. (Doc. 8 at 10.) Plaintiff points to 20 C.F.R. §§ 404.1519(a)(4), which requires a consultative examination when there is a change in the claimant's condition that is "likely to affect [her] ability to work, but the current severity of [her] impairment is not established." Plaintiff's condition improved post-

surgery, however. (Tr. at 708.) Plaintiff fails to show how these records subsequent to Dr. Wood's consultative mental examination would alter the outcome of this case.

Plaintiff also argues that a consultative examination was necessary based on Dr. Wood's suggestion that formal memory testing or information intelligence testing, or both, be performed subsequent to his evaluation. (Doc. 8 at 11.) Considering Dr. Wood's report as a whole, though, it is evident that his recommendation was merely a suggestion based on Plaintiff's assertion that her short-term memory was affected by a head injury the previous year. (Tr. at 265.) Dr. Wood, however, did not observe any apparent symptoms of memory loss in his examination of Plaintiff. (*Id.*) Thus, as the ALJ had enough information to make an informed decision as to Plaintiff's disability, further examination was not necessary.

Finally, a claimant's RFC is an administrative assessment, and, ultimately, it is the Commissioner's responsibility to determine it. 20 C.F.R. §§ 404.1512, 416.912. While the ALJ will consider evidence and opinions from physicians and state agency medical and psychological consultants, the RFC finding is reserved for the ALJ alone. *See generally* 20 C.F.R. §§ 404.1527(e)(2), 416.927 (e)(2). In this case, the ALJ performed the function by function analysis as required to determine Plaintiff's RFC. (Tr. at 22-25.) Moreover, the burden is on the plaintiff to provide medical and other

evidence to prove her disability. *See* 20 C.F.R. §§ 404.1512, 416.912; *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Consequently, it is not the ALJ's responsibility to seek out more evidence than is provided by Plaintiff. In this case, the ALJ's decision that Plaintiff was not disabled during the relevant period was supported by substantial evidence.

IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Cox's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 12th day of September 2012.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
160704